UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| DONNA EILEEN FISHLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 2:16-CV-317 |
| vs. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## AMENDED[1] REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's Supplemental Security Income ("SSI") application was denied after a hearing before an Administrative Law Judge ("ALJ") in March 2013. (Doc. 9, Transcript p. 9) (reference to "Tr" and the page denote the record). Plaintiff sought judicial review in *Fishley v. Soc. Sec. Admin.*, No. 2:14-CV- 254 in this Court. The matter was remanded to the Commissioner for further proceedings in 2015. (Tr. 945). The application was denied on remand in June 2016 following another hearing. (Tr. 870). This action is for judicial review of the final decision on remand per 42 U.S.C. § 405(g). Each party has filed a dispositive motion [Docs. 15 & 19] with a supporting memorandum [Docs. 16 & 20].

**I.    APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is

---

[1] This Amended Report and Recommendation is substantively identical to the Report and Recommendation entered on March 5, 2018, except that an error in the Conclusion section relative to the disposition of the case has been corrected. The time for objecting to the undersigned recommendations shall remain calculated from March 5, 2018.

evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). A Court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007). The Court may consider any record evidence regardless of whether the ALJ cited it. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation is used in disability determinations. 20 C.F.R. § 404.1520. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4).

The claimant has the burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II.  RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A.  Procedural History

In her SSI application, Donna Fishley ("Fishley") alleged she was disabled as of January 25, 2011 (Tr. 870). Her claim was initially denied in June 2011 and upon reconsideration in November 2011 (Tr. 9). A hearing was held on October 18, 2012; supplemental testimony was provided on February 28, 2013. The ALJ denied benefits in March 2013 (Tr. 9). Plaintiff sought judicial review in this Court. See *Fishley v. Comm'r of Soc. Sec.,* No. 2:14-cv-254-JRG-MCLC (E.D.TN).

In the first appeal, the Court found that substantial evidence did not support the Commissioner's decision because the ALJ gave greater weight to a State Agency psychologist than to both the opinion of a consultative examiner and that of a State Agency psychologist who had more information to base his opinion on than the one on which the ALJ had relied. The Court held that the ALJ's finding only mild limitations in activities of daily living and in maintaining concentration, persistence and pace was not supported by substantial evidence which clearly

showed Fishley had moderate limitations in those areas.[2] Although Fishley argued that the ALJ erred in his treatment of Dr. Cantor's opinion, the Court noted that "the ALJ did not err by failing to give Dr. Cantor's assessment controlling weight…." *Id.* at [Doc. 23]. The Court remanded the case back for further consideration on September 23, 2015 (Tr. 945).

On remand, the ALJ conducted another hearing on March 31, 2016 and received testimony from Fishley's treating psychologist, Dr. David C. Cantor, Fishley's son, Cole Rogers, and a vocational expert ("VE") (Tr. 893-921). The ALJ found, consistent with the remand order, that Fishley had moderate limitations not only in social functioning, but also moderate limitations in activities of daily living and in concentration, persistence and pace. As a result of these greater limitations, unlike in the prior decision, the ALJ limited her "to simple, repetitive work and she should work with things rather than people, should not work with the public, and should deal with supervisors and co-workers to the least extent possible." He then posed a hypothetical to the VE based on an RFC for medium work subject to those moderate limitations. The VE identified jobs Fishley could perform, and the ALJ found Fishley not disabled. The Appeals Council denied Plaintiff's review request. (Tr. 1).

**B.     Evidence in the Record**

The ALJ summarized the evidence in the record as did the parties. The Court will restate the relevant evidence here. Dr. Wayne Lanthorn performed a consultative examination on April 13, 2011 (Tr. 516). Fishley appeared as scheduled in a "clean and casual appearance." (Tr. 516). She advised that she suffered from migraines "most of the time." (Tr. 516). Dr. Lanthorn observed that Fishley was oriented in all spheres, knowing the current date, place of her appointment, and recent news events (Tr. 517). Her memory processes were intact, and she was able to supply the

---

[2] The Court noted in the R&R, which was adopted by the District Court, that "[t]he most germane and plausible information supports a finding that the Plaintiff has moderate limitations in her activities of daily living and concentration, persistence and pace as well as in maintaining social functioning." *Id.* at [Doc. 23, pg. 17].

historical information provided in his report (Tr. 517). He concluded that she had "fair short-term memory." (Tr. 517). She could perform average math computations and had "good abstactibility." (Tr. 517). He noted that she could attend and concentrate without difficulty, follow directions, and observed that "[q]uestions did not have to be repeated excessively." (Tr. 518). He found that her intellectual functioning was average. She reported cutting herself, but denied having done that for over a year (Tr. 518). Dr. Lanthorn considered her to be rational and alert. Concerning her daily activities, she reported that she does her laundry, does not cook much, does housework and goes to the grocery store.

On October 27, 2011, Dr. Lanthorn performed another consultative examination. Fishley arrived on time for her appointment and was oriented as to all spheres (Tr. 742). He had access to Dr. Cantor's records and noted that Dr. Cantor had diagnosed her with Major Depressive Disorder, recurrent, Moderate, PTSD along with a personality disorder NOS. This time Fishley reported that she does not do laundry, does some cooking, some housecleaning, goes to the grocery store, but usually with someone. She socializes with her son and friend. He observed her grooming and hygiene were adequate. Dr. Lanthorn noted no evidence of delusional thinking. She reported engaging in self-mutilation 13 years ago when her mother died. She reported cutting herself three weeks ago (Tr. 744). She reported daily headaches. He opined that her communication skills were intact; she was capable of managing her own funds; she would have no difficulties with learning simple and moderately complicated tasks but would be moderately limited regarding moderately complicated tasks; she had mild or greater limitations regarding interacting with others in the workplace and regarding sustaining concentration and persisting (Tr. 746).

Dr. Lanthorn completed the medical source statement of ability to do work-related activities (mental) and noted no limitations in her ability to understand and remember simple instructions or carry out simple instructions; moderate limitations regarding understanding and remembering complex instructions; and marked limitations in carrying out complex instructions

and in her ability to make judgments on complex work-related decisions (Tr. 747). He found moderate limitations in her dealing with the public, with supervisors and with co-workers and responding appropriately to usual work situations (Tr. 748).

In November 2011, Carole Kendall, Ph.D., a state agency psychologist, opined Fishley had moderate limitations in her social interactions, maintaining concentration, persistence and pace, but no limitations in regards to being able to carry out very short and simple instructions and remembering locations and work-like procedures (Tr. 750). Dr. Kendall opined Fishley would have moderate limitations in her ability to understand and remember detailed instructions; maintain attention and concentration for extended periods of time; interact with the public. She opined that Fishley would have marked limitations in her ability to carry out detailed instructions (Tr. 750).

At the hearing on remand, Dr. Cantor, who is a Licensed Clinical Psychologist, testified that he has treated Fishley since 2011 and diagnosed her with major depression, severe and borderline personality disorder (Tr. 894). He testified that since 2014, she missed about two-thirds of her appointments. He attributes this to her diagnosis because she "tends to live more in fantasy than reality. And her ability to make appointments, not only with myself but everywhere, is quite limited due to that she does not stay present with reality." (Tr. 895). He testified that her missing appointments has grown worse recently but has been consistent (Tr. 895). He testified that "[s]he spends most of her time hiding in her apartment crying, cutting herself, thinking about suicide. And when she's not by herself she frequently is in conflict with her daughter or her son on occasion." (Tr. 895-96). Dr. Cantor reviewed the records from Holston Counseling which incidentally do not indicate any suicidal ideation. He said that it was surprising, but explained that it was "because [Fishley] has extreme trust issues." (Tr. 896). He noted that group therapy was not effective not only because she did not show up for it but also when she did attend, she did not participate (Tr. 897). He described his individual therapy with Fishley as "eclectic therapy"

focusing on simple behavioral techniques of trying to reinforce positive behavior (Tr. 898).

Based on his treatment of her, Dr. Cantor opined that Fishley had marked limitations regarding her ability to remember locations and work-like procedures and also marked limitations in her ability to understand and remember very short and simple instructions (Tr. 900). He concluded that "for a person to remember anything they have to be present when that information is presented to them. [Fishley] is rarely present so that any information only has a minimal chance of being registered into the memory. And then her tendency to go with fantasy rather than reality, what she might remember may not be the reality of what she was told, and oftentimes it would not be … even with simple instructions." (Tr. 900-01). He opined that "her general memory does not seem intact at all. Her ability to remember even simple appointments is very limited." (Tr. 901-02). He also found extreme limitations in her ability to accept instructions and criticism from supervisors and to get along with co-workers. He opined she had marked limitations in maintaining socially appropriate behavior and "to adhere to basic things of neatness and cleanliness." (Tr. 903). He indicated that Fishley came to his office disheveled, but he has not noticed any poor hygiene (Tr. 903). He also indicated that she has "no interests, no hobbies … she has no life." (Tr. 905).

Dr. Cantor opined that Fishley's ability to act appropriately in the general public and ask simple questions was essentially precluded (Tr. 902). He testified that Fishley would not ask questions "because she would think that made her look bad." (Tr. 902). He did not think she could function in a work setting because "she would just be in a panic and would probably leave after just a few minutes" believing that her co-workers "were looking at her … and might harm her." (Tr. 903).

Dr. Cantor indicated Fishley received her medication form the mental health center (Tr. 906). The ALJ asked whether Fishley was his only source of the information on which he based his opinion that she suffered from marked limitations. He indicated that she was (Tr. 906). He

also testified that he has seen where she had cut herself in the past and recorded his observations in his records (Tr. 907). He acknowledged that he did not administer any psychological testing on Fishley (Tr. 907). He also recognized that Fishley has not been compliant with treatment (Tr. 907). He was also not aware that Fishley had a record of seeking substances from different doctors (Tr. 908). He has never seen her having a migraine.

The vocational expert also testified at the hearing. The ALJ posed the following hypothetical to the VE:

> The claimant is limited to medium work. She has moderate limitations in activities of daily living … and concentration, persistence and pace, as well as in maintaining social functioning. And the amplification of that is the claimant should not work with … people rather things. She should not work with the public. She should do simple, repetitive. And the things rather than people are to the least extent possible that she has to deal with supervisors and coworkers.

(Tr. 912). Based on the hypothetical, the VE identified a janitor as an occupation she could perform but reduced the number of available jobs by a half to reflect her limitations with working with the public and having other people present. The VE indicated that even with a half range of jobs, there would still be 10,000 jobs in Tennessee and 502,000 in the nation (Tr. 912). She also identified hand packers, with 1,500 jobs in Tennessee and 45,000 jobs in the nation, and stock clerk, with 3,000 jobs in Tennessee and 188,000 jobs in the nation (Tr. 912). The ALJ then clarified that those jobs would be consistent with one who could not work with the public and could perform simple, repetitive work. (Tr. 912). The VE indicated that they were.

Fishley's son testified that Fishley does not make dinner every night, but will occasionally make dinner for the family (Tr. 917). He reported that she would go weeks without showering, cry every day, talk to herself and yell about "nonsense things." (Tr. 917). He reported that "sometimes she'll be fine and normal…." (Tr. 918). He noted that "she'll make us dinner and watch TV with us and be fine and won't even cry and be all normal like any normal mom would be…and then she'll get in that mood…." (Tr. 918). After considering the testimony from the

hearing, the ALJ entered a decision finding Fishley not disabled. This appeal followed.

## III. ANALYSIS

The primary issue for review is whether the Commissioner's decision is supported by substantial evidence. As in the first appeal, Fishley argues that the ALJ failed to properly weigh Dr. Cantor's opinion as a treating source regarding her mental impairments. The ALJ "must" give a treating source opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)[3]). But, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." SSR 96–2p, 1996 WL 374188 at *2 (S.S.A. July 2, 1996).

"[A] finding that a treating source medical opinion ... is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." SSR 96–2p, 1996 WL 374188, at *4. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.; see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). These factors include as the length, nature and extent of the treatment relationship, exam frequency, opinion supportability and consistency with the whole record, and treating source specialization. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2). The Commissioner must "always give good reasons in [the] notice of determination or decision for the weight" afforded to the opinion of the claimant's treating source. 20 C.F.R. § 416.927(c)(2). The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

---

[3] Now at 20 C.F.R. § 404.1527(c)(2) with comparable SSI regulation at 20 C.F.R. § 416.927(c)(2).

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5 (S.S.A. July 2, 1996).

As an initial matter, Dr. Cantor's opinion is based solely on what Fishley reported to him. He did not perform any testing at all to arrive at his opinion. He employed no diagnostic techniques to arrive at his opinion. Instead, he concluded that Fishley was markedly limited in the areas in which he opined because Fishley said so. As the Court found before, the ALJ's treatment of Dr. Cantor's opinion was not in error. Not only was Dr. Cantor's opinion not supported by any testing, it was also inconsistent with the opinions of Dr. Lanthorn, who performed testing, and Drs. Kendall and Khaleeli, who reviewed the records. Dr. Lanthorn examined Fishley and concluded that she was moderately limited, not markedly limited, in her ability to carry out simple instructions. This was based on his testing of her. In contrast, Dr. Cantor's opinion is that her general memory was not intact at all. Yet his opinion is inconsistent with the objective testing performed by Dr. Lanthorn. The ALJ can properly discount the opinion of a treating source where it is inconsistent with other substantial evidence in the case record.

Ultimately, the ALJ gave the "greatest weight" to Dr. Kendall's opinion that Fishley had a moderate limitation in activities of daily living, concentration, persistence and pace and maintaining social functions. He gave significant weight to the reports of Dr. Lanthorn and less weight Dr. Khaleeli's report that indicated only mild limitations. The ALJ wholly rejected Dr. Cantor's treating provider opinion.

In rejecting Dr. Cantor's opinion that Fishley had marked limitations, the ALJ found that it was inconsistent with other substantial evidence in the record. He identified several inconsistencies in the treatment records regarding Fishley's behavior and Dr. Cantor's opinion. The ALJ noted that she cares for her own personal needs, is able to go out alone, is able to drive, grocery shops, cooks and cleans her house (Tr. 873). He noted that she can count change and manage her own money. That is inconsistent with Dr. Cantor's opinion that would essentially

preclude any of those activities. The ALJ properly considered Fishley's activities in concluding that her self-reported activities were inconsistent with the severity of limitations in Dr. Cantor's opinion. See *Dyer v. Soc. Sec. Admin.*, 568 Fed.Appx. 422, 426–27 (6th Cir. 2014)(affirming Commissioner where ALJ accorded little weight to plaintiff's treating physicians' opinions that were inconsistent with the weight of the medical evidence of record and plaintiff's activities of daily living); *Temples v. Comm'r of Soc. Sec.*, 515 Fed.Appx. 460, 462 (6th Cir. 2013)("[T]he ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments").

In the area of social functioning, he again found moderate limitations. In contrast to Dr. Cantor's opinion, the ALJ noted that Fishley was cooperative and related well with all of her treating and examining sources on most occasions. He noted that Fishley even indicated that she had no problems getting along with others and is able to get "along good with authority figures." (Tr. 873). He noted that she also visits with family members, goes out alone, and drives and grocery shops. That evidence is inconsistent with the limitations Dr. Cantor opined Fishley suffers from.

Regarding her ability for concentration, persistence and pace, he found moderate limitations. Again, this was in contrast to the opinion of Dr. Cantor. In this regard, he noted that the examining sources opined that she had average intelligence and adequate memory, able to maintain attention and concentration and follow instructions consistent with that required for simple repetitive work. He found that she would not be able to perform work that required any greater abilities. While Dr. Cantor found she would not present herself well at work, the ALJ noted that she appeared to the treating and examining sources as appropriately groomed and

dressed; she maintained good eye contact with them; she spoke so she could be easily understood; and she provided logical answers to the questions they asked. The providers also noted that she participated well in treatment discussions and decisions. (Tr. 873). This was in stark contrast to the opinion held by Dr. Cantor that she was essentially precluded from engaging in that interaction. At the same time she was seeing Dr. Cantor she was also regularly seeing the medical providers at Holston Counseling. Those records note a completely different person than Dr. Cantor described (Tr. 1201-50).

The ALJ noted that Fishley's treating primary care physician Dr. Gordon Bontrager declined to prescribe Fishley narcotics because her claim that she injured herself from a fall from a seated position not to be credible. The ALJ noted Fishley's request for opioids for treatment of her headache (Tr. 575). The record notes that Fishley "repeatedly requested Dilaudid … and other opioids. [Fishley] then requested another MD staying "They'll give me Dilaudid." (Tr. 575). Her treating physician Dr. Amylyn Crawford ceased prescribing her medication for her headaches until a neurologist examined Fishley (Tr. 876). Fishley appeared at Holston Counseling in October 2015 seeking narcotics. The records shows that the provider "discussed her history of filling controlled substances (Xanax and Ambien) from here inappropriately, which is why we will not consider any controlled medication at this time." (Tr. 1203).

The ALJ determined that Fishley's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 879). He noted that she can care for her personal needs, go out alone, drive and shop for groceries, cook and clean (Tr. 879). Regarding her mental impairments, the ALJ noted that she has been conservatively treated and adequately managed with routine medication. The ALJ examined the treatment notes and observed that the exacerbation of symptoms "occurred at times when she had been out of medication for months or was dealing with situational stressors." (Tr. 880). He noted her history of demanding a certain medication and

refusing to try others. He found that her appearance at her treatment providers was inconsistent with both Dr. Cantor's assessment and her claim that she suffered from "crying spells, panic attacks, or any other depressive or anxiety symptoms of such severity, frequency, or duration that would preclude … all work activity." (Tr. 880).

The ALJ accounted for her depressive, anxiety and personality disorders that result in moderate limitations by limiting her to simple repetitive work, work with things and not people, restricting her from working with the public, and dealing with supervisors and co-workers to the least extent possible. In reaching that conclusion, he gave great weight to State agency consultant's psychological assessments of moderate limitations and significant weight to Dr. Lanthorn's assessments of moderate limitations (Tr. 880). He noted that these opinions are consistent with the long history of her treatment at Frontier Health.

The ALJ rejected Dr. Cantor's opinion that she has marked and extreme limitations in most areas of mental functioning. The ALJ noted that substantial evidence in the record contradicts the rather extreme limitations imposed by Dr. Cantor. Dr. Cantor paints a picture of someone who cannot function in society, who has no ability to remember anything. Yet, as the ALJ notes, the treatment records suggest otherwise. It was not improper for the ALJ to consider the degree of limitations opined by Dr. Cantor and compare that with how she appeared and acted at other treatment providers. The ALJ did not summarily dismiss Dr. Cantor's opinion. He carefully analyzed it and gave good reasons why he rejected it. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009)(quoting SSR 96–2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). The Court finds that it does.

As to the supportability and consistency of Dr. Cantor's opinion with the record as a whole, the ALJ provided a thorough analysis of the medical record in concluding that Dr. Cantor's opinion

13

was not fully supportable. He noted Fishley's drug seeking behavior, her generally normal appearance at all her appointments with other treatment providers, her ability to engage in discussion of her treatment options with her health care providers. All of that, the ALJ, could and should consider in deciding what weight to afford Dr. Cantor's opinion that Fishley was essentially precluded from engaging in any work-related activity. He noted the inconsistencies in the GAF scores that were assessed at relatively the same time. Dr. Cantor assessed her at a 30 GAF on May 13, 2011 and on April 13, 2011, her GAF score was 60.

The ALJ also considered Dr. Cantor's opinion in rejecting the mild limitations in areas of mental functioning opined by the State agency psychological consultant's initial assessment. He found that she had greater limitations than mild based in part on Dr. Cantor's treatment of her. However, he rejected Dr. Cantor's marked limitations. The Court finds substantial evidence supports the ALJ's decision not to afford any weight to the opinion of Dr. Cantor that Fishley was markedly limited in the areas in which he opined.

## IV.   CONCLUSION

For the reasons stated, the court RECOMMENDS that Plaintiff's motion for judgment on the pleadings [Doc. 15] be DENIED, and the Defendant's motion for summary judgment [Doc. 19] be GRANTED. Further, the original Report and Recommendation [Doc. 22] shall be stricken from the record.[3]

Respectfully submitted,

s/ Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE

---

[3]**Objections to this Report and Recommendation must be filed on or before March 16, 2018, by the objecting party and responses thereto by March 23, 2018.** 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Objections must conform to the requirements of Fed. R. Civ. P. 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).